UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| VANNA HONG VO, <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. EDCV 14-01105-DFM <br><br> MEMORANDUM OPINION AND ORDER |

　　Plaintiff Vanna Vo ("Plaintiff") appeals from the Commissioner's denial of her application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. The Court concludes that the Administrative Law Judge ("ALJ") erred in relying on the testimony of the vocational expert ("VE") when determining that there were significant jobs available that Plaintiff could perform in the regional and national economies. The ALJ's decision is accordingly reversed and this matter is remanded for further proceedings consistent with this opinion.

///

///

///

# I.
# BACKGROUND

Plaintiff filed her applications for benefits on October 22, 2010, alleging disability beginning February 2, 2008. Administrative Record ("AR") 167; 178. The ALJ found that Plaintiff had the severe impairments of "cervical spine degenerative disc disease with disc herniation at the C4-5 and C5-6 levels; mild C5 and C6 radiculopathy; lumbar spine degenerative disc disease with spinal stenosis at the L2-3 and L3-4 levels; mild right ulnar neuropathy at the elbow; left arm cubital tunnel syndrome; history of bilateral carpal tunnel syndrome (CTS), status-post right CTS release surgery; diabetes mellitus; diabetic neuropathy; and depression." AR 15. The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with additional mental and physical limitations, including a mental limitation to "simple repetitive tasks involving one to two-step job instructions; and . . . occasional[] interaction with the public, supervisors and coworkers." AR 17.

At the hearing, the ALJ gave the VE a hypothetical based upon the ALJ's RFC. AR 64-65. The VE testified that Plaintiff could perform the jobs of "order clerk," Dictionary of Occupational Titles ("DOT") 209.567-014; "inspector," DOT 669.687-014; and "assembler," DOT 706.684-030. AR 68-69. The VE testified that there were 211,000 order clerk jobs nationally and 5,900 regionally; 410,000 inspector jobs nationally and 24,000 regionally; and 229,000 assembler jobs nationally and 10,000 regionally. AR 65-66. The VE averred that his source for the number of jobs available was the DOT along with the companion publication, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), as required under Social Security Ruling 00-4P. See AR 66. The VE did not claim that he was reducing or modifying the numbers of available jobs in those categories

based on Plaintiff's non-exertional limits. See AR 65-66. Plaintiff's counsel did not ask the VE any questions on cross-examination. AR 67.

Based on the Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform her past relevant work as a systems analyst, computer operator, or data entry operator. AR 23-24. Relying upon the VE's testimony, however, the ALJ concluded that Plaintiff was not disabled because there were significant jobs available in the regional and national economies that she could still perform despite her impairments. AR 25.

## II.
## ISSUES PRESENTED

The parties dispute whether the ALJ: (1) properly considered the VE's identification of work available for Plaintiff; and (2) properly considered the VE's testimony about the number of jobs in the national and regional economies. See Joint Stipulation ("JS") at 4.

## III.
## DISCUSSION

The ALJ concluded that Plaintiff could, notwithstanding her RFC, make a successful adjustment to employment as an order clerk, inspector, or assembler as those jobs were defined within specific portions of the DOT. As set forth below, the Court finds that the ALJ erred in two ways: first, by not addressing a conflict between the DOT listing for "order clerk" and Plaintiff's limitations to occasional interaction with the public; and second, by relying on fundamentally flawed testimony from the VE about the availability of inspector and assembler jobs in the national and regional economies. Because these errors together affect all three jobs the ALJ concluded that Plaintiff could perform, the ALJ's decision must be reversed and this case remanded for further proceedings.

///

A.   **The ALJ Did Not Address the Conflict Between the DOT Listing for Order Clerk and Plaintiff's Limitations**

   1.   **Applicable Law**

At the fifth step of the five-step claims evaluation process, the agency bears the burden of showing that a claimant can perform work that exists in "significant numbers" in the national economy, taking into account the claimant's RFC, age, education, and work experience. Tackett v. Apfel, 180 F.3d 1094, 1098, 1100 (9th Cir. 1999). A VE's testimony may be sufficient to carry that burden; however, the expert's opinion must reflect all limitations the ALJ includes in the RFC. Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001).

When an expert's testimony conflicts with a DOT job listing, the ALJ "must elicit a reasonable explanation for the conflict before relying on the [expert's] evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). Thus, if there is a conflict between the expert's opinion and the DOT parameters, the ALJ must determine that the expert has a "reasonable explanation" for this conflict. Massachi v. Astrue, 486 F.3d 1149, 1153-54 (9th Cir. 2007). Where an ALJ fails to do this, this Court cannot determine whether there is substantial evidence to support the ALJ's step-five finding and must remand for further proceedings. Id. at 1154.

   2.   **Analysis**

The VE testified that Plaintiff could perform the position of "order clerk" as described in DOT 209.567-014. AR 68. The position described by that DOT code is actually entitled "order clerk, food and beverage," and the position is described as someone who "[t]akes food and beverage orders over telephone or intercom system and records order on ticket . . . . Suggests menu items, and substitutions for items not available, and answers questions regarding food or

service. Distributes order tickets or calls out order to kitchen employees." DICOT 209.567-014, 1991 WL 671794 (1991). As relevant here, the ALJ's RFC assessment determined that Plaintiff was able to perform sedentary work with a limitation to "occasional[] interaction with the public, supervisors and coworkers." AR 17. Plaintiff contends that this limitation precludes her from work as a food and beverage order clerk because that job requires frequent communication with other people. JS at 6.

After reviewing the DOT description of the responsibilities of a food and beverage order clerk, the Court is unable to reconcile how a person limited to occasional interaction with the public and coworkers would be able to perform the job. Indeed, the Commissioner admits that "the DOT's narrative description suggests that the order clerk occupation may require more than occasional interaction with customers and kitchen employees." JS at 15.

To the extent the VE had a basis for concluding that Plaintiff could perform this job notwithstanding the DOT classifications, the VE was required to express those reasons for the ALJ to consider. Massachi, 486 F.3d at 1153-54. But the VE's only statement was to confirm that his testimony was "consistent with" the DOT. AR 66. The VE offered no explanation for his conclusion that a person with Plaintiff's limitation to "occasional[] interaction with the public, supervisors and coworkers" could perform the job of order clerk, which requires frequent communication with the public and coworkers as an integral part of the job. Moreover, the VE did not provide an evidentiary basis for the ALJ to justify a divergence from the DOT listing in this particular case. See AR 64-67. The disparity between the DOT listing and the VE's testimony required a "reasonable explanation" from the VE in order for the ALJ to properly rely on the testimony. Where no such explanation has been given, the Court must remand to the agency for further proceedings. See Massachi, 486 F.3d at 1154.

**B.     The ALJ Relied on Fundamentally Flawed Testimony from the VE about the Number of Inspector and Assembler Jobs in the Economy**

   **1.     Applicable Law**

An individual is not disabled if she can engage in work that exists in the national economy. The Commissioner must demonstrate that such jobs exist "in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3) (B); see Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 523-25 (9th Cir. 2014). "The burden of establishing that there exists other work in significant numbers"—either nationally or regionally—"lies with the Commissioner." Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012). If a reviewing court finds the number of jobs at either the regional or national level significant, the ALJ's decision must be upheld. Id. at 390.

An ALJ may properly rely on a VE's "testimony regarding the number of relevant jobs in the national economy," as agency regulations allow an ALJ to "take administrative notice of any reliable job information." Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). There is no "bright-line rule for what constitutes a significant number of jobs" in a region or in the national. Beltran, 700 F.3d at 389.

An ALJ's decision regarding the numerosity of an alternative occupation must be supported by substantial evidence. The "substantial evidence" standard involves a quantum of proof "more than a mere scintilla but less than a preponderance" of the evidence presented to the adjudicator. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is such that "a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). A reasonable mind need not accept obvious errors in a VE's testimony that lead to implausible results. See Farias v. Colvin, 519 F. App'x 439, 440 (9th Cir. 2013) ("A reasonable mind

would not accept the VE's testimony that there are 3,600 head dance hall hostess positions in the local economy and 342,000 in the national economy."). Moreover, a reviewing court should "weigh both the evidence that supports and the evidence that detracts from the ALJ's factual conclusions." Gutierrez, 740 F.3d at 523.

### 2. Analysis

The VE testified that Plaintiff could perform the position of "inspector" as described in DOT 669.687-014. The position described by that DOT code is actually entitled "dowel inspector," and the position is described as someone in the woodworking industry who "[i]nspects dowel pins for flaws, such as square ends, knots, or splits, and discards defective dowels." DICOT 669.687-014, 1991 WL 686074 (1991). The VE also testified that Plaintiff could perform the position of "assembler" as described in DOT 706.684-030. The position described by the DOT code is actually entitled "atomizer assembler," which the DOT describes as someone who "[a]ssembles component parts of perfume atomizers, such as stems, washers, springs, and plungers, using handtools. Screws completed atomizers onto empty glass containers and places them in boxes." DICOT 706.684-030, 1991 WL 679052 (1991).

The VE stated that his testimony was consistent with the DOT and the SCO regarding how many jobs were available in the referenced occupations. AR 66. Unfortunately, the Bureau of Labor Statistics ("BLS") Occupational Employment Statistics program ("OES") does not compile data by DOT code, but rather by Standard Occupational Classification System code ("SOC"), a new system adopted by the BLS.[1] The DOT code identified by the VE for

---

[1] BLS uses the SOC to "classify workers into occupational categories for the purpose of collecting, calculating, or disseminating data." See http://www.bls.gov/soc/.

7

"inspector" appears in the larger category of "Inspectors, Testers, Sorters, Samplers, and Weighers" at SOC 51-9061. In May 2010, OES estimated that for SOC 51-9061 there were 410,750 total jobs available in the nation with 13,710 of those jobs located in the Los Angeles-Long Beach-Glendale, CA Metropolitan Division and another 7,050 in the Santa Ana-Anaheim-Irvine Metropolitan Division.[2] Seemingly in reliance on these numbers, the VE testified at the May 2012 hearing that there were 410,000 jobs nationally and 24,000 regionally for the occupation of "inspector" as defined in DOT 669.687-014. AR 65-66.

The DOT code identified by the VE for "assembler" appears in the larger category of "Production Workers, All Other" at SOC 51-9199. In May 2009, OES estimated that for SOC 51-9199 there were 239,550 jobs available in the nation. No data is available through OES for the number of jobs available in 51-9199 in 2010; however, the OES did estimate the number of jobs available for "Production Workers, All Other," at 51-9399 for 2010.[3] In May 2010, OES estimated that for SOC 51-9399 there were 229,240 total jobs available in the nation with 5,380 of those jobs located in the Los Angeles-Long Beach-Glendale, CA Metropolitan Division and another 3,560 in the Santa Ana-Anaheim-Irvine Metropolitan Division.[4] Seemingly in reliance on these numbers, the VE testified at the May 2012 hearing that there were approximately 229,000 jobs nationally and 10,000 regionally for the

---

[2] See http://www.bls.gov/oes/2010/may/oes519061.htm. The VE offered no definition of the geographic boundaries of the region he used; the Court uses the above metropolitan areas.

[3] It appears as though job code 51-9199 was changed in 2010 to job code 51-9399. Regardless, the job numbers available for 51-9199 in 2009 and 51-9399 in 2010 are roughly equivalent.

[4] See http://www.bls.gov/oes/2010/may/oes519399.htm.

occupation of "assembler" as defined in DOT 669.687-014. AR 66.

The Court sees an error in the VE's analysis, an error which is significant enough to give the Court reason to believe that the VE's conclusion is not only implausible but just plain wrong. The error arises from the fact that the occupation described in DOT 669.687-014 is but one of the 782 occupations in SOC 51-9061. See JS, Exh. 3. Additionally, the occupation described in DOT 706.684-030 is but one of the 1,592 occupations in SOC 51-9199.[5] See JS, Exh. 5. It is not clear how the VE determined that all of the jobs available in SOC 51-9061 were "inspectors" as described in DOT 669.687-014 or how roughly all of the jobs available in SOC 51-9199 were "assemblers" as described in DOT 706.684-030.[6] It strains credulity to accept the VE's testimony that there are 410,000 people nationally and 24,000 people in the region making a living by inspecting wooden dowels, or that there are 229,000 people nationally and 10,000 in the region making a living assembling perfume bottle atomizers, yet that was what the ALJ seemed to conclude in reliance on the VE's flawed testimony. See AR 25.

The Court's concern about the VE's testimony is heightened because it is apparent that many of the jobs in SOC 51-9061 and SOC 51-9199 would be outside the limitations imposed by Plaintiff's RFC. Given that the title of SOC 51-9061 is "Inspectors, Testers, Sorters, Samplers, and Weighers," it is no surprise that there are other "inspector" jobs among the 782 in SOC Code 51-

---

[5] See http://www.onetonline.org/link/result/51-9199.00?c=cw&s_cw=DOT&g=Go.

[6] At least one court has identified the difficulty in applying the numerical data available by SOC codes to a particular DOT title, noting that such "many-to-one mapping . . . necessarily creates information loss." Brault v. Soc. Sec. Admin., Comm'r., 683 F.3d 443, 447 n.4 (2d Cir. 2012).

9061. DOT 622.281-010 identifies the occupation of "locomotive inspector" as a job requiring light work from a worker who "inspects railroad locomotives in roundhouse or shop to determine extent of wear and needed repairs, using handtools and measuring instruments." DICOT 622.281-101 1991 WL 685304 (1991). DOT 529.367-018 identifies the occupation of "quality-control inspector," or someone who "[w]eighs and tests cookies and crackers for conformance to quality and weight standards." Both these inspector occupations require light work, a classification beyond Plaintiff's RFC of sedentary work.

Likewise, there are numerous "assembler" jobs in SOC Code 51-9199, "Production Workers, All Other." DOT 518.684-022 identifies the occupation of "wax-pattern assembler" as someone who "[a]ssembles wax components of patterns used in lost-wax casting process: Melts edges of wax components, using heated knife, and manually positions and joins components." DICOT 518.684-022, 1991 WL 673867 (1991). DOT 556.687-010 identifies the occupation of "bowling-ball-mold assembler," as someone who "[c]oats bowling ball molds components with parting agent, installs ball cores, and assembles and seals molds preparatory to filling and curing: Inspects parts to ensure clean and dry condition and applies parting agent, using brush or spray gun." DICOT 556.687-010, 1991 WL 683500 (1991). Both these assembler occupations require medium work, a classification beyond Plaintiff's RFC of sedentary work.

Remand is appropriate where "no reasonable mind could accept the employment numbers proffered by the VE as substantial evidence." Farias, 519 F. App'x at 440-41. Here, "no reasonable mind" could believe that, of the approximately 410,000 people employed in the national economy as "Inspectors, Testers, Sorters, Samplers, and Weighers," all of these are wooden dowel inspectors; likewise, no reasonable mind could believe that of

the approximately 229,000 to 239,000 people employed in the national economy as "Production Workers, All Other," all to almost all are perfume bottle atomizer assemblers. See, e.g., Daniels v. Colvin, No. 13-654, 2014 WL 794498, at *5-*6 (C.D. Cal. Feb. 26, 2014) (remanding because VE's testimony regarding the total number of available jobs was based on an unexplained conclusion "that roughly one-third of all people employed in the broad Counter and Rental Clerks category of jobs served as photofinishing clerks"); Darling v. Colvin, No. 13-266, 2013 WL 4768038, at *5-*6 (C.D. Cal. Sept. 4, 2013) (remanding for further proceedings because "the employment numbers the [VE] provided at the hearing may have erroneously pertained to entire . . . statistical groups rather than the individual representative occupations encompassed therein"); Direaux v. Colvin, No. 13-0061, 2013 WL 6239327, at *3-*5 (C.D. Cal. Dec. 3, 2013) (remanding because VE's opinion regarding availability of jobs in national and regional economies job was "fundamentally flawed") (citing Farias, 519 F. App'x at 440-41).

The Commissioner argues that the Court should not second-guess the ALJ's reliance on the VE's testimony. See JS at 36. Yet the Court is required, even under the cases cited by the Commissioner, to determine whether the VE's testimony is "fundamentally flawed." See, e.g., Dunn v. Colvin, No. 13-1219, 2014 WL 2159275, at *9 (S.D. Cal. May 23, 2014) ("[T]his Court interprets Farias to allow a district court to remand a case when the vocational expert's testimony is fundamentally flawed."). The Commissioner offers no explanation, much less a persuasive one, for how the VE's testimony can be squared with the objective data. Where OES data show that there are (1) approximately 410,000 people employed in 782 different occupations, and (2) approximately 229,000 to 239,000 people employed in 1,592 different occupations, the VE must explain how he came to conclude that the two occupations he referenced comprised effectively all of those employed. This is

particularly true where, as here, it appears from the description of those occupations and the application of common sense that those occupations would comprise a much smaller proportion.

In sum, because the VE provided no information as to the methodology and source of his testimony regarding the availability of the individual representative jobs, remand is appropriate. Upon remand the VE must provide sufficient, detailed evidence, including accurate information regarding the number of available jobs, to allow the ALJ to determine whether there are jobs that exist in significant numbers in the regional and national economies which Plaintiff can perform given her RFC.

## IV.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and the action is REMANDED for further proceedings consistent with this opinion.

Dated: March 24, 2015

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge